# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TERESA M. GAFFNEY,

     Plaintiff,

v.                              Case No: 8:22-cv-1613-CEH-SPF

MARIE T RIVES, JOSHUA E.
DOYLE, LINDSEY M GUINAND,
PATRICIA ANN SAVITZ and PETER
R. RAMSBERGER, ATTORNEY
GENERAL ASHLEY MOODY

     Defendants.

_____

## ORDER

This cause comes before the Court upon Defendant Marie T. Rives' Motion to Dismiss and Incorporated Memorandum of Law (Doc. 20) and Defendants Joshua E. Doyle and Lindsey M. Guinand's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 21). Plaintiff Teresa M. Gaffney responds in opposition to both motions. Docs. 42, 46. Doyle and Guinand filed a reply (Doc. 51), as did Rives (Doc. 47). Doyle and Guinand also filed a notice of supplemental authority. Doc. 40. For the reasons set forth below, the Court will grant the motions to dismiss.

## I.   BACKGROUND[1]

In 2009, John J. Gaffney conveyed property located on South Clark Avenue in Tampa, Florida (the "Clark Property") to himself as a life estate, with a remainder to Plaintiff Teresa M. Gaffney, his daughter. Doc. 1 ¶ 13.[2] Phillip A. Baumann and Phillip A. Baumann, P.A., subsequently filed a guardianship action and an action to determine the incapacity of John Gaffney on behalf of Maryalice Tyler, another of John Gaffney's daughters. *Id.* ¶ 17. Upon his death in 2011, John Gaffney's life-estate interest in the Clark Property was extinguished, and Teresa Gaffney's remainder interest ripened into a fee-simple ownership of the property. *Id.* ¶ 21. In 2012, a case regarding the Estate of John J. Gaffney was opened in state court. *Id.* ¶ 22. In February 2013, Plaintiff filed a claim against the Estate for services provided. *Id.* ¶ 23. Baumann, P.A., also filed a claim for attorney's fees earned in the guardianship action. *Id.* ¶ 24.

---

[1] When ruling on a motion to dismiss under Rule 12(b)(6), the Court derives the statement of facts from the factual allegations of the plaintiff's complaint, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] The Complaint largely and indiscriminately regurgitates the facts from another suit Gaffney filed in this Court, *Gaffney et al v. Ficarrotta et al*, 8:21-cv-00021-CEH-CPT, which the undersigned dismissed with prejudice in December of 2022. As such, many of Plaintiff's factual allegations have little to do with any claims in this case. Furthermore, Gaffney, repeatedly, refers to her co-Plaintiff in the earlier case, who is not a party to this matter, as a plaintiff in this case. Doc. 1 ¶¶ 45, 54, 59.

The Court takes judicial notice of the prior lawsuit. At any stage of a proceeding, the Court may judicially notice facts that are not subject to reasonable dispute because, in relevant part, they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (d).  The Court may take judicial notice of another court's (or in this case, its own) order only for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation. *United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir. 1994).

In October 2013, a default judgment was entered against the Estate for attorney's fees owed to Baumann, P.A.. *Id.* ¶ 28. Baumann, P.A., Baumann, and Michael R. Kangas sought to obtain ownership of the Clark Property or to force its sale to pay the outstanding bill for legal services. *Id.* ¶ 29. Plaintiff alleges the Clark Property never belonged to the Estate because John Gaffney conveyed it to himself as a life estate, with the remainder to Plaintiff. *Id.* ¶ 30.

In April 2014, Baumann, as administrator ad litem of the Estate, filed an action against Gaffney and Sarah K. Sussman, individually and as trustee of the Sussman Family Living Trust, seeking to reverse the 2009 transfer of the Clark Property on the grounds that it constituted a fraudulent transfer (the "Clark Property Action"). *Id.* ¶¶ 33–34. In December 2015, Judge Paul L. Huey became the presiding judge in the Clark Property Action. *Id.* ¶ 41. Shortly after, Gaffney called the Judge to ask about a potential judicial appointee who had listed him as a reference. *Id.* ¶ 42. Gaffney alleges that during the call, she was sexually harassed and threatened with retaliation if she did not comply. *Id.* ¶¶ 43–45. In support of these allegations, Gaffney attaches an unsworn affidavit describing the alleged conversation (Doc. 1-6).[3]

In 2016, Gaffney moved to disqualify Judge Huey. Doc. 1 ¶ 47. Judge Huey denied that motion. *Id.* Later, however, he recused himself and the Clark Property Action was transferred to another judge. *Id.* ¶ 49. Gaffney alleges that the various

---

[3] In her Complaint and Responses, Gaffney relies upon numerous exhibits. However, she fails to offer any explanation as to why the Court may consider these exhibits for purposes of a Rule 12(b)(6) attack. As such, the Court has not considered these exhibits for this analysis.

judges involved in her case then reached an agreement to act together to "deny Plaintiff her 14th Amendment Constitutional right to due process," which resulted in a default judgment and sanctions against her. *Id.* ¶¶ 50–53. She also alleges that she was sanctioned in retaliation for reporting the sexual harassment. *Id.* ¶ 54. Gaffney states that she continued to object to "unlawful and unconstitutional punishment for reporting the sexual harassment." *Id.* She alleges that her motions to disqualify and motions to dismiss were then unlawfully denied. *Id.* ¶¶ 55–56.

Finally, a writ of possession was issued for the Clark Property in favor of Kangas, Baumann, and Baumann, P.A. *Id.* ¶ 57. This writ allowed them to take possession of the Clark Property and permitted Gaffney's removal from the property. *Id.* Sussman then filed for bankruptcy and the Clark Property became subject to the accompanying automatic stay. *Id.* ¶ 58.

Gaffney and Sussman appealed to Florida's Second District Court of Appeal. *Id.* ¶ 59. Gaffney alleges that various judges had ex parte conversations regarding the appeal. *Id.* ¶¶ 59–60. Judge Rex M. Barbas later granted a motion to disqualify himself, explaining that he could not be fair and impartial to Gaffney, Sussman, or their attorney. *Id.* ¶ 61.

Judge Caroline Tesche Arkin was then appointed to preside over the Clark Property Action to allegedly "effectuate the continuing transgressions" of Plaintiff's rights. *Id.* ¶ 63. According to Gaffney, Judge Tesche Arkin violated her rights by refusing to provide an opportunity to be heard or due process and upholding the

seizure of the Clark Property. *Id.* ¶ 64. Judge Huey allegedly admitted to the sexual harassment and stated that the Clark Property Action should have been dismissed. *Id.* ¶ 65.

In January 2021, Gaffney filed a lawsuit in federal court against Phillip A. Baumann, Michael R. Kangas, Judge Paul L. Huey, Judge Rex M. Barbas, Judge Caroline Tesche Arkin, and Judge Ronald Ficarrotta. *Id.* ¶ 67. The undersigned presided over this case, and ultimately dismissed the federal claims in that suit with prejudice and remanded the remaining claims to state court. *Gaffney v. Ficarrotta,* No. 8:21-cv-21-CEH-CPT, 2022 WL 17668825, at *1 (M.D. Fla. Dec. 14, 2022).

Following a lengthy recitation of these background facts, Gaffney introduces the Defendants in this matter for the first time. In January 2021, Defendant Marie T. Rives, as an Assistant Attorney General for the State of Florida, entered an appearance on behalf of the Judges in Plaintiff's suit against them. *Id.* ¶ 68. According to Plaintiff, Rives spoke to staff attorneys from the Florida Bar and "developed a conspiracy to violate Plaintiff's Constitutions [sic] rights." *Id.* ¶ 69. Specifically, Gaffney states the Defendants decided a Bar Complaint should be filed against her in retaliation for her lawsuit and reports about various acts committed by the Judges who presided over the Clark Property Matter. *Id.* Gaffney states that Rives was removed as the Judges' attorney in the parallel case due to unspecified "misconduct" committed by her and Miguel A. Olivella, Jr. *Id.* ¶ 70. Further, she claims Olivella filed a retaliatory motion for sanctions against her seeking attorney's fees. *Id.* ¶ 71. She claims that Rives was removed as an attorney in the parallel case and Olivella withdrew his Motion for

Sanctions when the Florida Attorney General's Office learned of these actions. *Id.* ¶ 72.

Gaffney claims that on June 22, 2021, Defendant Lindsey Guinand, Chief Branch Discipline Counsel for Lawyer Regulation of the Florida Bar, along with Defendant Patricia Ann Toro Savitz, as Staff Counsel of the Florida Bar, filed a Bar Complaint against her. Doc. 1-9. Plaintiff alleges that the bar complaint constitutes unlawful retaliation against her and is "misconduct for which no immunity is available." Doc. 1 ¶ 74. Further, she claims that Guinand and Savitz prosecuted the complaint in bad faith and "participated" with Rives to retaliate against her. *Id.* Gaffney separately alleges that Guinand and Savitz discovered misconduct committed by Kangas and Baumann and nevertheless failed to file Bar Complaints against them. *Id.* ¶ 75.

Defendant Judge Peter R. Ramsberger is the referee of the Florida Bar Complaint and allegedly participated in the conspiracy by barring a number of Plaintiff's witnesses, denying her notices of deposition, and granting the Florida Bar's Motion for Partial Summary Judgment prior to the close of discovery. *Id.* ¶ 76. Gaffney claims many of Judge Ramsberger's Orders violated due process, and that he erroneously denied many of her motions. *Id.* ¶ 77.

## II.   PROCEDURAL DEVELOPMENT

Gaffney filed this suit in July 2022. Doc. 1. She brings two claims against the various defendants: (1) civil rights conspiracy in violation of 42 U.S.C. § 1983 and (2)

civil rights conspiracy in violation of 42 U.S.C. § 1983 (equal protection). Doc. 1 ¶¶ 79–96.

Gaffney sues Marie T. Rives, Assistant Attorney General for the State of Florida, Lindsey M. Guinand, Chief Branch Discipline Counsel – Lawyer Regulation of the Florida Bar, and Peter R. Ramsberger, Referee of the Florida Bar each in their individual capacity. *Id.* ¶¶ 7, 9–10. She names Ashley Moody, Attorney General for the State of Florida, and Joshua E. Doyle, Executive Director of the Florida Bar, each in their official capacity. *Id.* ¶¶ 6, 12.

Gaffney also sues Patricia Ann Toro Savitz, Staff Counsel of the Florida Bar, in her individual capacity. However, according to the Bar Defendants' Motion to Dismiss, Savitz was never served, and Gaffney's response does not state otherwise. Doc. 21 at 1; *see* Doc. 46. According to an unopposed motion to withdraw as attorney by Defendants' Attorney Karen Ann Brodeen, AG Moody has not been served either. Doc. 65. As reflected on the docket, it does not appear that Ramsberger has been served either. Finally, Miguel A. Olivella, Jr., assistant counsel with the Office of the Florida AG, was sued individually, but the Court dismissed the claims against him with prejudice pursuant to Plaintiff's notice of voluntary dismissal. Docs. 57, 58. Discovery has been stayed in this matter pending a ruling on the instant Motions to Dismiss. Doc. 53.

## III.   ANALYSIS

The basis for the Court's subject-matter jurisdiction is federal-question jurisdiction under 28 U.S.C. § 1331. Doc. 1 ¶ 4. Gaffney brings two claims under 42

U.S.C. § 1983. As described below, all claims are due to be dismissed as to the defendants who have been served. Doyle and Guinand are entitled to absolute immunity. The claims against Rives are due to be dismissed because Gaffney fails to state a plausible conspiracy claim.

### A. Federal Rule of Civil Procedure 12(b)(1)

Defendants seek dismissal pursuant to both Federal Rule of Civil Procedure 12(b)(6) (discussed *infra*) and Rule 12(b)(1). A facial attack on subject matter jurisdiction under Rule 12(b)(1)1 "requires [ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted). In assessing a motion to dismiss under Rule 12(b)(1), the Court affords Plaintiff the same safeguards as those provided in the Rule 12(b)(6) context—it considers all allegations as true and confines its analysis to the four corners of the complaint. *Id.*

### B. Standing

Rives argues that Plaintiff fails to allege an injury in fact and therefore lacks standing. Doc. 20 at 7. She argues that Gaffney has alleged only that Rives spoke to unnamed Bar attorneys—which somehow led to the Bar Complaint being filed—and that these allegations are insufficient to satisfy either prong of the standing analysis. *Id.* at 8. Gaffney responds by citing basic caselaw on a plaintiff's standing requirement and concluding that she "has met her burden of standing." Doc. 42 at ¶¶ 27–28. Defendant replies that Gaffney fails to show how the filing of the Bar Complaint was

the cause of any injury-in-fact or make the necessary showing to recover retroactive relief. Doc. 47 at 3–4.

To meet constitutional standing requirements, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable court ruling. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). The injury must be "(1) concrete and particularized and (2) actual or imminent, not conjectural or hypothetical." *Id.* at 560. A "particularized" injury "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) (quoting *Lujan,* 504 U.S. at 560 n.1).

A plaintiff must also allege a causal connection that "link[s] the injury to the complained-of conduct" of the defendant. This requirement is not satisfied if the injury results instead from "the independent action of some third party not before the court." *Ga. Latino Alliance for Human Rights v. Governor of Ga.,* 691 F.3d 1250, 1257 (11th Cir. 2012) (quoting *Bennett v. Spear,* 520 U.S. 154, 167 (1997) (quotation marks omitted)). In conducting this inquiry "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family v. Pinellas Suncoast Transit Authority,* 344 F.3d 1263, 1273 (11th Cir. 2003) (citation omitted). To establish injury-in-fact, Gaffney must demonstrate that she holds "a legally cognizable interest that has been or is imminently at risk of being invaded." *Id.* at 1286. At the pleading stage, this requirement is not onerous and will be satisfied

by "general factual allegations of injury resulting from [Defendant's] conduct." *Lujan* 504 U.S. at 561.

As to the claims against Rives, the Court agrees that the Complaint is short on explanation of how Rives' actions injured Gaffney. The main claim against Rives is that she had discussions with Bar Counsel that led to a denial of Gaffney's constitutional rights under the First and Fourteenth Amendments. Doc. 1 ¶¶ 2, 69, 82, 94. Gaffney alleges that she suffered "severe physical and psychiatric injuries" based on her rights being deprived, in addition to emotional distress and economic damages. *Id.* ¶¶ 88, 96. Rives argues that Gaffney lacks standing to sue because the Bar Complaint has not resulted in any disciplinary action against Gaffney, Gaffney had an opportunity to challenge the allegations in the Bar Complaint, and she still had a Bar license at the time this lawsuit was filed, meaning that the Bar Complaint had not caused her any damages.[4] Doc. 20 at 8–10.

As difficult to parse and convoluted as Plaintiff's pleadings are, the Court will not dismiss the complaint for lack of standing. Gaffney alleges a vast conspiracy among the various Defendants to deprive her of her First Amendment right to free speech (specifically, her right to speak out about alleged sexual harassment) and her Fourteenth Amendment right to due process. Although the complaint is rambling and scattershot, Plaintiff sufficiently alleges that Rives, in concert with the other

---

[4] Although the Court has not considered the notice of supplemental authority at docket entry 99 for purposes of deciding the issues raised in the parties' motion to dismiss, the Court notes that, according to Defendant Rives, the Florida Bar has now permanently disbarred plaintiff from the practice of law in Florida.

Defendants caused her an injury in fact. Nevertheless, Gaffney's claims against Rives are to be dismissed, as described, *infra*, because the complaint fails to state a plausible conspiracy claim.

### C. Eleventh Amendment Immunity

Defendant Joshua E. Doyle argues that the Florida Bar, an arm of the Florida Supreme Court, is immune from Gaffney's claims. Doc. 21 at 5. Doyle, sued in his official capacity as Executive Director of the Florida Bar, claims that both counts against him should be dismissed for lack of subject matter jurisdiction. *Id.* Gaffney's response fails to address Doyle's arguments whatsoever (Doc. 46), and the Court agrees that he is immune from these claims.

"An 'official capacity' suit generally is another way to plead an action against the entity of which the officer is an agent." *Shean v. Garcia*, No. 3:20-cv-750-MMH-PDB, 2021 WL 2403936, at *5 (M.D. Fla. Apr. 15, 2021), *report and recommendation adopted*, 2021 WL 1811772 (M.D. Fla. May 6, 2021). However, "[t]he Eleventh Amendment protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc), *cert denied*, 540 U.S. 1107 (2004). "Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Florida has not "waived its Eleventh Amendment immunity in federal civil rights actions." *Fincher v. State of Fla.*

*Dep't of Labor & Emp't Sec. Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986); *see Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986) (stating that Florida's limited waiver of sovereign immunity in Florida Statute § 768.28 does not constitute consent to be sued in federal court under § 1983). Nor has Congress abrogated Eleventh Amendment immunity in § 1983 actions. *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). And the Florida Bar, as an arm of the Florida Supreme Court, is entitled to such immunity. *Kaimowitz v. Fla. Bar,* 996 F.2d 1151, 1155 (11th Cir. 1993) ("The Eleventh Amendment prohibits actions against state courts and state bars."); *Henry v. Fla. Bar,* 701 F. App'x 878, 881 (11th Cir. 2017).

Gaffney sues Doyle in his official capacity as Executive Director of the Florida Bar. Doc. 1 ¶ 6. Because the Bar is an arm of the Florida Supreme Court, Doyle is entitled to Eleventh Amendment immunity. Because the Court lacks subject matter jurisdiction over claims barred by the Eleventh Amendment, it has no power to render a judgment on the merits, and must dismiss such claims without prejudice. *Nichols v. Alabama State Bar,* 815 F.3d 726, 733 (11th Cir. 2016). Thus, Gaffney's claims against Doyle will be dismissed for lack of subject matter jurisdiction, and the Court will not consider their merits.

Guinand and Rives are named in their individual capacities. Doc. 1 ¶¶ 7, 9, 10. The Eleventh Amendment provides no bar to recovery of damages against state officers acting in their individual capacities, so it does not bar Plaintiff's claims against these Defendants. *Gamble*, 779 F.2d at 1518.

### D. Absolute Immunity

**Guinand**

Guinand, sued in her individual capacity, claims absolute immunity because the Florida Bar and its staff counsel are immune from civil liability for all acts arising out of their official duties related to attorney disciplinary proceedings. Doc. 21 at 6. Gaffney disagrees, arguing that Guinand committed "retaliation per se" and the Bar Complaint "cited the sexual harassment complaint against Judge Huey and the Federal Civil Rights lawsuit." Doc. 46 ¶ 19. Gaffney further argues that Guinand "provided false information to the Court about Judge Huey," knowingly violated federal law by "push[ing]" for the Bar Complaint, and as such is not entitled to absolute immunity. *Id.* ¶¶ 18–19, 32.

"The Florida Bar and its staff counsel are 'agencies of the Supreme Court for the purpose of administering its jurisdiction. The Florida Bar is thus an arm and part of the judiciary . . . and the Florida Bar and its staff counsel are absolutely immune from suits arising from their official actions.'" *Kermanj v. Long,* No. 11-62495-CIV, 2013 WL 12086205, at *1 (S.D. Fla. Jan. 31, 2013) (quoting *Mueller v. Fla. Bar,* 390 So. 2d 449 (Fla. 4th DCA 1980)); *see also Tindall v. Fla. Bar,* No. 97-387-CIV-T-17C, 1997 WL 689636, at *4 (M.D. Fla. Oct. 14, 1997), *aff'd,* 163 F.3d 1358 (11th Cir. 1998).

Therefore, the law extends absolute immunity to the Florida Bar and its disciplinary staff in relation to attorney disciplinary proceedings. The complaint seeks monetary damages arising from Guinand's role in the Florida Bar's investigation and disciplinary proceedings against Plaintiff. Doc. 1 ¶¶ 73–75. Plaintiff does not allege

that Guinand acted outside her official capacity. Therefore, she is entitled to absolute immunity against Plaintiff's claims. *Kivisto v. Soifer,* No. 0:10-CV-61758-UU, 2011 WL 13186683, at *5–6 (S.D. Fla. Mar. 14, 2011), *aff'd,* 448 F. App'x 923 (11th Cir. 2011)). Because Plaintiff's claims against Guinand fall squarely within the bounds of absolute immunity, amendment of this claim would be futile, and the Court will dismiss it with prejudice.

### Rives

Rives argues that she is entitled to absolute immunity because the only factual allegations against her are that her conversations with Florida Bar attorneys led to the Bar Complaint against Gaffney. Doc. 20 at 16–18. Gaffney does not respond beyond stating that Rives is "not entitled to absolute immunity or any other immunity." Doc. 42 ¶¶ 1, 47, 63.

The Florida Supreme Court has granted absolute immunity to individuals who file Bar Complaints against attorneys, at least in the defamation context. *Tobkin v. Jarboe,* 710 So. 2d 975, 977 (Fla. 1998). This absolute immunity has likewise been applied in federal court. *See Alan v. Wells Fargo Bank., N.A.,* 604 Fed. Appx. 863 (11th Cir. 2015). However, every such case that the Court has reviewed differs in at least one respect from this one: absolute immunity was granted to the defendant(s) who actually filed the Bar Complaint.[5] *Id.; See e.g., Alvarez v. Ridge,* No. 03-20049-CIV, 2004 WL 7331011, at *3 (S.D. Fla. Mar. 31, 2004).

---

[5] In addition, each of the cases reviewed by the Court granted the defendant(s) immunity as to a defamation claim. Although a Magistrate Judge's Report and Recommendation in a

Here, Rives allegedly participated in a conspiracy that resulted in the filing of the Bar Complaint. Although these allegations relate to a Bar Complaint, the Court is not persuaded that a Defendant accused of conspiring with others to deprive a Plaintiff of constitutional rights, eventually resulting in the filing of a Bar Complaint, is entitled to absolute immunity. The Complaint alleges (and Plaintiff's attached copy of the Bar Complaint does not contradict) that Guinand and Savitz filed the Bar Complaint against Plaintiff. Doc. 1 ¶ 73. As such, they might be entitled to absolute immunity under this theory, not Rives.

### E.  Qualified Immunity

Only Gaffney's claims against Rives remain. Rives argues that she is entitled to qualified immunity on both counts. Doc. 20 at 18.

The Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). To receive qualified immunity, "an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks omitted). "A governmental official acts within his discretionary

---

conspiracy case suggested that the result should be no different for a claim under 42 U.S.C. § 1983, the district court did not adopt that finding, dismissing the complaint for other reasons. *See Howard v. Harris*, No. 4:22CV97-AW-MAF, 2023 WL 2994660, at *5 (N.D. Fla. Feb. 16, 2023), *report and recommendation adopted in part,* 2023 WL 2664248 (Mar. 27, 2023).

authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). For this analysis, "'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Id.* (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

If a defendant establishes that he was acting within discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate," *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015) (internal quotation marks omitted). A plaintiff can do so by showing that "(1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct," *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Rives argues that the allegations specific to her—that she had conversations with unnamed Bar counsel, which then led to a Bar Complaint being filed against Gaffney—took place within the scope of her "discretionary authority as a lawyer." Doc. 20 at 21. Arguing that the Florida Bar Rules of Professional Conduct charge lawyers with reporting the professional misconduct of other lawyers, Rives claims she acted within the scope of her discretionary authority as a member of the Florida Bar and that Gaffney must show that qualified immunity is not appropriate. *Id.*

Gaffney's Response again provides little substantive argument, besides stating that Rives is not entitled to qualified immunity. Doc. 42 ¶¶ 1, 45, 61. Notwithstanding her lack of a response, the Court cannot find that qualified immunity is appropriate at this stage. Rives' pleadings discuss the scope of her discretionary authority as a lawyer and a member of the Florida Bar. She cites no case law (and the Court found none) supporting the theory that attorneys or members of the Florida Bar can be considered public officials in the qualified immunity context. As such, Rives fails to make the threshold showing that she acted in her discretionary authority as a public official.

### F.  Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

Finally, to state a claim for conspiracy under 42 U.S.C. § 1983 (as alleged in both counts), a plaintiff must allege that the defendants reached an understanding or

agreement to deny her one of her constitutional rights, and the conspiracy resulted in an actual denial of one of those rights. *Weiland v. Palm Beach Cnty. Sheriff's Off.,* 792 F.3d 1313, 1327 (11th Cir. 2015) (citing *Hadley v. Gutierrez,* 526 F.3d 1324, 1332 (11th Cir. 2008)). With these principles in mind, the Court examines the claims against Rives, the only non-immune Defendant.

                1. <u>"Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983"</u>
                   <u>(Count I)</u>

Gaffney sues Rives, Guinand, Olivella, Savitz and Judge Ramsberger for "civil rights conspiracy in violation of 42 U.S.C. § 1983" in Count I. She alleges, inarticulately, that Defendants "filed a Bar Complaint against Plaintiffs, and through a conspiracy with one another conspired with one another under color of law, and knowingly deprived Plaintiff of her First Amendment Right to free speech." Doc. 1 ¶ 80. She further alleges each of the Defendants: (1) committed overt acts; (2) "was an otherwise willful participant" in joint activity as part of the conspiracy; and (3) "used" the Florida Bar Complaint to impose unlawful discipline against Gaffney. *Id.* ¶¶ 80– 85. In framing this claim, Gaffney alleges that Defendants conspired to deprive her of her First Amendment rights and alludes to unspecified violations of her Fourteenth Amendment rights. *Id.* ¶¶ 1, 2, 88.

Rives argues that Gaffney fails to state a claim because her allegations, even taken as true and in a favorable light, fail to link Defendants to any concerted effort to deprive Gaffney of her rights, state what the conspiratorial understanding among the Defendants was, or provide sufficient detail about the understanding reached. Doc. 20

at 9–10. Rives also argues that the allegations against her fail to link her to a concerted effort to violate Gaffney's rights. *Id.* at 9. She notes that the only conduct she is alleged to have taken is speaking with unnamed Bar staff lawyers and argues that this is insufficient to make out a plausible conspiracy claim. *Id.* at 9–10. She also argues that the complaint fails to describe the conspiratorial understanding that Defendants reached with specificity. In particular, there are no allegations Rives spoke with any co-Defendant, or that any two Defendants actually spoke with each other. *Id.* As such, Rives argues it cannot be reasonably inferred that Defendants entered into a conspiracy. *Id.* Overall, she argues that the allegations are vague, general, and conclusory, and that to the extent any alleged facts are attributed to a Defendant entitled to immunity for their role in the conspiracy, that action cannot form a basis for a conspiracy. *Id.* at 11.

Gaffney does not respond to the failure-to-state-a-claim arguments, except to unpersuasively argue that her complaint should not be dismissed under *Twombly* and *Iqbal*. Doc. 42 at 8–10. Gaffney responds that Rives is aware her conduct contributed to the "false and fraudulent" bar complaint, restates her harassment claims against a nonparty state court judge, and summarily concludes that she has pled sufficient facts to survive a motion to dismiss. *Id.* at 9.

The elements of a § 1983 claim alleging denial of procedural due process are: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1337 (11th Cir. 2006). "To state a § 1983 First Amendment retaliation claim, a plaintiff

generally must show that: (1) she engaged in constitutionally protected speech, such as her right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

"[T]he linchpin of conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). "Conclusory allegations of an agreement, without any factual basis to make the allegations plausible, are insufficient to state a conspiracy claim." *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019) (citing *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1148 (N.D. Ga. 2016)).

Gaffney has not plausibly alleged that Rives reached an understanding or agreement with the other defendants. Instead, Gaffney offers only conclusory allegations, such as that Rives "had conversations with staff attorneys from the Florida Bar" and "further developed a conspiracy" to violate "Plaintiff's Constitutions [sic] rights" in retaliation for Gaffney's various complaints about judges. Doc. 1 ¶ 69. Additionally, the Complaint lacks any factual allegations about which actions Rives took in conspiring to deprive Plaintiff of her rights to freedom of speech and due process. Thus, Gaffney's allegations about the alleged conspiracy are conclusory and lack sufficient facts to "state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

For example, in Count One, Gaffney claims that Defendants "developed a conspiracy to violate Plaintiff's Constitutions [sic] rights" and "conspired by concerted action to accomplish an unlawful purpose by an unlawful means." Doc. 1 ¶¶ 69, 81. These allegations are little more than a recitation of the elements of a conspiracy claim. Gaffney's allegations about the requisite agreement for the conspiracy between the Defendants are also conclusory and a basis for dismissal. *See Weiland*, 792 F.3d at 1327; *Ragan*, 418 F. Supp. 3d at 999. She alleges that "it is overwhelmingly clear that all of the Defendants reached an unlawful agreement or conspiracy between them to act willfully in joint activity" to deprive her of rights. Doc. 1 ¶ 86. Again, this is nothing more than a legal conclusion that parrots the elements of conspiracy. Overall, the allegations about the extent of the agreement lack plausibility as required under Fed. R. Civ. P. 12(b)(6).[6] As such, Count I is due to be dismissed.

### 2. "Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983 – Equal Protection" (Count II)

Count II will also be dismissed for failure to state a claim against Rives. After recounting her sexual harassment allegations once again, Gaffney alleges that "Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law," denied her equal protection and retaliated against her for "complaining about [the alleged] sexual Harassment and to deny Plaintiff equal protection of the

---

[6] None of the exhibits attached to the Complaint provide sufficient factual support for the alleged conspiracy in this claim or any other claim, either. For example, Exhibit 6 is Plaintiff's unsworn "affidavit" discussing alleged sexual harassment. She cites no basis for the Court to consider it, and it is unrelated to the claims at issue.

law." *Id.* at ¶¶ 93–94. Thus, she alleges that Defendants conspired to violate her right to equal protection.

Rives argues that Plaintiff's retaliation allegations do not make for a plausible Equal Protection Clause claim. Doc. 20 at 15. She argues that Gaffney fails to make the necessary allegation that she has been treated differently from other persons similarly situated. *Id.* Gaffney's Response cites several employment-related cases at length and argues that "intentional discrimination against an employee in the workplace because of the employee's sex is plainly a violation of that employee's right to equal protection." Doc. 42 ¶¶ 41–43. She does not, however, elaborate on how her cited caselaw applies to the instant case.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). "In order to state an equal protection claim, the plaintiff must therefore show that the state treated him differently than other similarly situated persons based on his or her membership in an identifiable group or class of persons." *Ragan*, 418 F. Supp. at 985. Stating an equal protection claim under § 1983 generally requires a plaintiff to state that "(1) he is similarly situated to [others] who received more favorable treatment; and (2) the state engaged in invidious discrimination based on race, religion, national origin, or some other constitutionally protected basis."

*Womack v. Carroll Cnty.*, 840 F. App'x 404, 407 (11th Cir. 2020) (alteration in original) (quoting *Sweet v. Sec'y, Dep't of Corrs.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006)).

Here, the Complaint fails to plausibly allege any discrimination by Defendants (or discriminatory acts by Rives specifically) on account of race, gender, or any other protected characteristic. Nor does Gaffney plausibly allege that others received more favorable treatment, let alone that Rives treated others more favorably because of any characteristic. Gaffney also fails to plausibly allege any conspiracy to deny her equal protection of the law. Furthermore, for the same reasons that Count I was deficient, Gaffney's allegations about the alleged conspiracy in Count II are also conclusory, as they largely parrot the elements of her claim and lack sufficient facts to render the claim plausible.

In sum, Plaintiff's allegations are not "sufficient to demonstrate a deprivation of h[er] constitutional rights," because "[t]o maintain a claim under § 1983, the plaintiff must demonstrate that the defendants deprived h[er] of a cognizable constitutionally guaranteed civil right." *Kivisto*, 2011 WL 13186683 at *4. Plaintiff's Complaint fails to allege specific and plausible facts that do so. Additionally, Plaintiff fails to adequately allege that Rives participated in a conspiracy, and her "vague and conclusory allegations suggesting a § 1983 conspiracy are insufficient to withstand a motion to dismiss." *Id.* For example, Plaintiff fails to make particularized allegations about what the agreements were and how they led to her rights being deprived. *Id.* Again, all that has been alleged against Rives is that she had conversations with Florida Bar staff and then participated in a sweeping and ill-defined conspiracy to

deprive Plaintiff of her rights. The general allegations against the other defendants say nothing about Rives' actions with specificity either. As a result, the Complaint contains no plausible claim upon which relief can be granted and is due to be dismissed.

As Plaintiff's claims against the defendants who have been served and who allegedly conspired against her have all been dismissed, the Court questions Plaintiff's ability to state plausible claims for relief against Rives. Nevertheless, Plaintiff will be allowed one opportunity to amend her claims as to Rives, if she chooses. *See* Rule 15, Fed. R. Civ. P. When deciding whether to amend her complaint, Plaintiff should be mindful of Rule 11, Fed. R. Civ. P.

## IV.   CONCLUSION

Accordingly, it is **ORDERED**:

1. Defendants Joshua E. Doyle and Lindsey M. Guinand's Motion to Dismiss (Doc. 21) is **GRANTED** as follows: Count I ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983") and Count II ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983 – Equal Protection") are **DISMISSED WITHOUT PREJUDICE** as to Defendant Joshua E. Doyle for lack of subject-matter jurisdiction. Count I ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983") and Count II ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983 – Equal Protection") are **DISMISSED WITH PREJUDICE** as to Lindsey M. Guinand.

2. Defendants Marie T. Rives' Motion to Dismiss (Doc. 20) is **GRANTED** as follows: Count I ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983") and Count II ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983 – Equal Protection") as to Marie T. Rives are **DISMISSED WITHOUT PREJUDICE.**   Plaintiff is granted leave to file an amended complaint as to her claims against Defendant Marie T. Rives within **FOURTEEN (14) DAYS** of this Order. Failure to file an amended complaint within the time provided will result in the dismissal of this action.

3. Within **FOURTEEN (14) DAYS** of this Order, Plaintiff is directed to show cause why her claims as to Defendants Attorney General Ashley Moody, Patricia Ann Toro Savitz, and Peter Ramsberger[7] should not be dismissed because Plaintiff has failed to serve them within 90 days of filing her complaint. *See* Fed. R. Civ. P. 4(m).

---

[7] Although Defendant Judge Ramsberger has not apparently been served or appeared in this action, the Court notes that he would appear to have a meritorious argument for judicial immunity, as discussed in Rives' Motion to Dismiss. Doc. 20 at 13. Judges are entitled to absolute judicial immunity from liability for acts taken in their judicial capacity unless they acted in the "clear absence of all jurisdiction." *Bolin v. Story,* 225 F.3d 1234, 1239 (11th Cir. 2000) (citations omitted). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id.* A judge might act in the clear absence of all jurisdiction (and therefore lose immunity) when they act "purely in a private and non-judicial capacity." *Henzel v. Gerstein,* 608 F.2d 654, 658 (5th Cir. 1979). "[B]ar admissions, bar disciplinary actions, and disbarments are essentially judicial in nature." *Matter of Calvo,* 88 F.3d 962, 965 (11th Cir. 1996).

**DONE** and **ORDERED** in Tampa, Florida on September 15, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties